Filed 11/29/18; Modified and Certified for Pub. 12/20/18 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ASSOCIATED CHINO TEACHERS, | E068163 |
| Plaintiff and Appellant, | (Super.Ct.No. CIVDS1621798) |
| v. | PUBLIC—REDACTED VERSION OF OPINION |
| CHINO VALLEY UNIFIED SCHOOL DISTRICT, | Redacts material from sealed record.[*] (Cal. Rules of Court, |
| Defendant and Respondent. | rules 8.45, 8.46(f)(1) and (f)(2).) |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge.

Reversed with directions.

Schwartz, Steinsapir, Dohrmann & Sommers, Michael R. Feinberg and Amy

Moolin Cu for Plaintiff and Appellant.

---

[*] This case involves material from a sealed record. In accordance with California Rules of Court, rule 8.46(f)(1) and (f)(2), we have prepared both public (redacted) and sealed (unredacted) versions of this opinion. We hereby order the unredacted version of this opinion sealed.

Atkinson, Andelson, Loya, Ruud & Romo, Anthony P. De Marco and Jacquelyn Takeda Morenz for Defendant and Respondent.

On December 21, 2016, plaintiff and appellant Associated Chino Teachers (ACT) filed a verified petition for writ of mandate, seeking to prevent defendant and respondent Chino Valley Unified School District (CVUSD) from releasing two documents relating to the results of an investigation into a public high school teacher's (Doe) actions as a girls' volleyball coach. Doe's actions did not result in any type of discipline or adverse action from the California Commission on Teacher Credentialing (CTC). The trial court denied the petition. ACT appeals contending the disclosure of these documents is not authorized under the California Public Records Act. (CPRA; Gov. Code, § 6250, et seq.)[1] It argues that disclosure would significantly harm Doe's privacy rights. (§ 6254, subd. (c).) Alternatively, ACT asserts the public interest in not disclosing the documents outweighs the public interest in disclosing them. (§ 6255.)

We conclude the CPRA does not require the production of the documents because Doe's privacy interests outweigh the public interest in their disclosure. We therefore do not address ACT's alternative argument. We reverse the judgment and remand the matter to the trial court to enter a new order granting the petition.

---

[1] Statutory references are to the Government Code unless otherwise indicated.

## I. PROCEDURAL BACKGROUND AND FACTS

ACT is the employee organization that serves as the exclusive representative for CVUSD's teachers. Doe is a high school teacher in CVUSD and a member of ACT. During their[2] two-decade career with CVUSD, they have never received any warnings or discipline relating to their assignment as a classroom teacher. During the fall of 2016, while Doe was coaching the girls' volleyball team, CVUSD received two separate complaints from parents/guardians (hereinafter "complainants") of student-athletes, regarding Doe's conduct, namely, yelling and belittling the student-athletes in public and holding practice at their home. Complainants did not allege any sexual harassment, sexual misconduct, physical violence, threats of violence, drug-related wrongdoing, criminal activity, or any other egregious misconduct.

CVUSD investigated the allegations against Doe and provided complainants with a written disposition of their complaints (dated Oct. 21 & Nov. 21, 2016, collectively disposition letters). Doe received a letter of warning (dated Nov. 4, 2016) and a letter of concern (dated Dec. 1, 2016), which were placed in their official personnel file. The

---

[2]  In order to protect the identity of Doe, we will use the gender-neutral pronoun "they." (See American University, The Center for Diversity & Inclusion, Office of Campus Life, Pronouns: A Guide for the American University Community at <https://www.american.edu/loader.cfm?csModule=security/getfile&pageid=4045420> [as of Nov. 29, 2018] ["When using 'they' as a singular gender inclusive pronoun, you would still conjugate associated verbs as you would for the plural version, as in 'they are an activist' or 'they like to go shopping', not 'they is an activist' or 'they likes to go shopping.'"].)

disposition letters were not placed in Doe's official personnel file. Doe resigned from the coaching position in November 2016.

On or about November 14, 2016, Beau Yarbrough, a staff writer for the Southern California News Group and a contributor to the Inland Valley Daily Bulletin, requested (1) Doe's "current job assignment and current salary," (2) "information regarding additional compensation or benefits for coaches at [CVUSD] and the length of coaching assignments," (3) "a copy of all complaints made against [Doe] in [their] career with [CVUSD]" and (4) "any documents relating to the status or resolution of those complaints." Yarbrough later narrowed his request to records that demonstrated the results of CVUSD's investigation. After determining that the complaints against Doe were substantial in nature and well founded, CVUSD informed Doe of its intent to disclose the disposition letters, while providing them an opportunity to contest such disclosure pursuant to the holding in *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 (*Marken*). Doe objected to the release of the disposition letters. Nonetheless, on December 13, 2016, CVUSD notified Doe that it would be releasing them after December 23, 2016, unless prevented from doing so by a court order. On December 19, 2016, CVUSD provided Doe with copies of the letters.

On December 21, 2016, ACT filed a verified petition for writ of mandate seeking to prevent disclosure of the disposition letters. On December 22, 2016, ACT successfully moved ex parte for a temporary restraining order (TRO) and order to show cause for a preliminary injunction, enjoining CVUSD from disclosing Doe's personnel records during the pendency of the action, and the trial court sealed the relevant documents.

4

Subsequently, the parties stipulated that the preliminary injunction would be in effect pending further order of the court following the hearing on the petition for writ of mandate.

On February 21, 2017, the trial court denied the petition for writ of mandate without providing substantive reasoning or analysis in support of its ruling. Judgment was entered on April 5, 2017, and CVUSD filed a notice of entry of judgment on April 12, 2017.

## II. DISCUSSION

### A. Standard of Review.

Generally, "[a]n appellate court's role in the CPRA process is to 'conduct an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence. [Citation.]'" (*Wilder v. Superior Court* (1998) 66 Cal.App.4th 77, 84.) Here, however, the pertinent facts are not disputed and the question is simply whether the CPRA mandates disclosure of the disposition letters. Since the issue involves the application of the CPRA to a given set of facts, it is a question of law subject to de novo appellate review. (*Lorig v. Medical Board* (2000) 78 Cal.App.4th 462, 467.)

### B. The CPRA.

"The California Constitution guarantees both the individual's right of privacy [citations] and the public's 'right of access to information concerning the public's business' [citation], including 'the writings of public officials and agencies.' [Citations.] With respect to the latter right, the Supreme Court has observed, 'Openness in

5

government is essential to the functioning of a democracy. "Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process."' [Citation.]

"In the CPRA the Legislature has sought to reconcile these two fundamental, but sometimes conflicting, conditional rights. While 'mindful of the right of individuals to privacy' [citation], the Legislature has declared 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' [Citation.] Thus, the CPRA generally provides 'every person has a right to inspect any public record . . .' [citation], '[e]xcept with respect to public records exempt from disclosure by express provisions of law . . . .' [Citation.] Section 6254, in turn, lists 29 categories of documents exempt from the requirement of public disclosure, many of which are designed to protect individual privacy, including, 'Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.' [Citations.] Section 6255, subdivision (a), also permits a public agency to withhold other records if it can demonstrate 'on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.'

"These statutory exemptions from mandatory disclosure under the CPRA must be narrowly construed. [Citations.] Moreover, the exemptions from disclosure provided by section 6254 are permissive, not mandatory: They allow nondisclosure but do not

6

prohibit disclosure. [Citations.] Indeed, the penultimate sentence of section 6254 provides, 'Nothing in this section prevents any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law.' [Citation.]" (*Marken*, *supra*, 202 Cal.App.4th at pp. 1261-1262.)

**C. The Appeal Is Not Moot Because the Right to Assert Exemption Under the CPRA Has Not Been Forfeited.**

Because the disposition letters were disclosed to complainants, CVUSD contends that they are public records, and the appeal therefore is moot. (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 656 [citizen complaints to the State Department of Consumer Affairs alleging unethical practices by licensed collection agencies were public records available for public inspection because the agency routinely disclosed them to the affected collection agencies].) We disagree. CVUSD's unilateral disclosure of the disposition letters to complainants did not forfeit the right to assert the personnel and similar files exemption under the CPRA, nor did it mandate the release of these documents to the general public. (*BRV*, *Inc. v. Superior Court* (2006) 143 Cal.App.4th 742 (*BRV*).)

In *BRV*, a school district received complaints that its superintendent had sexually harassed and verbally abused students. (*BRV*, *supra*, 143 Cal.App.4th at p. 747.) The district investigated the complaints by retaining a private investigator (PI), who interviewed numerous parents, students, and employees. (*Id.* at pp. 747-748.) The PI prepared, inter alia, summaries of the interviews and submitted all documents to the

7

district. (*Id*. at p. 748.) The district sent to some complainants a copy of the summary of their interview, soliciting their review and comments. (*Ibid*.) BRV, a newspaper publisher, obtained copies of some of these documents. (*Ibid*.)

Meanwhile, the superintendent resigned on certain conditions, including the district's agreement not to release any documents in the superintendent's personnel file absent any consent or unless required by law. (*BRV*, *supra*, 143 Cal.App.4th at p. 748.) Shortly thereafter, the district received approximately 40 tort claims based on the superintendent's alleged misconduct. (*Id*. at p. 749.) Pursuant to CPRA, BRV requested copies of the PI's report and any documentation pertaining to the district's retention of the PI and the superintendent's resignation. When the district refused to provide the PI's report on the ground it was exempt under the CPRA, BRV filed a petition for writ of mandate. (*BRV*, at p. 749.) The trial court determined that the PI's report, including the interview summaries, were not subject to disclosure, and the district did not waive its right to prevent disclosure by transmitting the interview summaries to complainants for review and comment. (*Ibid*.) The Court of Appeal held that the documents should be disclosed. In reaching this decision, the court did not conclude that the interview summaries became public records upon their disclosure to complainants. Rather, it weighed the superintendent's privacy interest against the public's right to know and found that the public's right to know outweighed any privacy interests due to the superintendent's "position of authority as a public official and the public nature of the allegations." (*Id*. at p. 759.)

8

This case shares some factual similarities with *BRV*. Here, the relevant documents were provided to the complainants; however, they were not provided to a newspaper. Given the similarity of this case to *BRV*, we agree with the *BRV* court's approach of weighing the competing interests before ordering disclosure of the documents. We therefore conclude that the right to assert confidentiality is not forfeited even though the information contained in the disposition letters is the same as or like the information available elsewhere in the public domain. (*BRV*, *supra*, 143 Cal.App.4th at pp. 748-749; *Pasadena Police Officers Association v. Superior Court* (2015) 240 Cal.App.4th 268, 294 ["The fact that information in an officer's personnel records may also be found in an unprotected source does not impact the confidentiality of the personnel records themselves."].) The appeal therefore is not moot.

## D. The Documents are Exempt from Disclosure.

ACT contends the trial court erred in finding that the disposition letters were not exempt from disclosure under the CPRA. It argues that Doe's privacy interest outweighs any interest the public may have in viewing the insubstantial allegations and findings pertaining to Doe's actions in their former position as a high school girls' volleyball coach. We agree.

Public records are exempt from disclosure if they (1) are "[p]ersonnel, . . . or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy" (§ 6254, subd. (c)) or (2) fit within a catch-all exemption where "the facts of the particular case" demonstrate that "the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record"

9

(§ 6255, subd. (a)). "Courts apply a three-step analysis in determining whether [either of these exemptions] applies. As a threshold matter, the court must determine whether the records sought constitute a personnel file, . . . or other similar file. If so, the court must determine whether disclosure of the information would 'compromise substantial privacy interests; if privacy interests in given information are *de minimis* disclosure would not amount to a "clearly unwarranted invasion of personal privacy" . . . . Lastly, the court must determine whether the potential harm to privacy interests from disclosure outweighs the public interest in disclosure. [Citations.]'" (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 818.) In weighing these competing interests, "we must determine 'the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty.' [Citation.]" (*Id*. at p. 820.)

*1. The Disposition Letters Constitute Personnel or Other Similar Records.*

The parties disagree on whether the disposition letters qualify as personnel or other similar records exempt from disclosure. We conclude that they qualify as personnel or other similar records.

The disposition letters contain personal information that applies specifically to Doe.                    [REDACTED]                    Because they include personal information about Doe to which access is limited to the employee's supervisors, they qualify as personnel records. The scope of personnel records generally covers records "relating to the employee's performance or to any grievance concerning the employee." (Lab. Code, § 1198.5, subd. (a); see also Ed. Code, § 44031, subd. (a) [extending Lab. Code, § 1198.5 to Cal. teachers].)

10

Contrary to CVUSD's claim that "the records indicate they do not contain information pertaining to 'confidential personnel matters,'" [REDACTED]

[REDACTED]

Because the letters contain information about Doe that is subject to privacy issues (investigation into allegations of misconduct), they also qualify as other similar files. The term "similar files" has been interpreted to "have a broad, rather than a narrow, meaning." (*Department of State v. Washington Post Co*. (1982) 456 U.S. 595, 600 [detailed government records on an individual qualify as other similar files (addressing the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.) request for documents indicating whether certain Iranian nationals held valid U.S. passports)]; *Versaci v. Superior Court*, *supra*, 127 Cal.App.4th at 818 [CPRA was modeled after the FOIA and thus "the 'legislative history and judicial construction of the FOIA . . . "serve to illuminate the interpretation of its California counterpart."' [Citation.]"].) Similar files may simply be government records containing "information which applies to a particular individual." (*Department of State v. Washington Post Co.*, at p. 602; *Dept. of Air Force v. Rose* (1976) 425 U.S. 352, 353-354 [case summaries from cadet ethics hearings at the Air Force Academy qualify as other similar files].)

Notwithstanding the above, CVUSD finds it significant that the letters "were not placed in [Doe's] personnel file," and argues that because they "were specifically prepared for disclosure to members of the public," the letters do not qualify as personnel

11

or similar files.  We are not persuaded by the argument.  Regarding the failure to include the letters in Doe's personnel file, there are rational reasons for not including them.  However, the letters do not lose the protection of section 6254, subdivision (c), merely because they are stored by CVUSD in a location other than personnel files.  (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 624 ["document's status as public or confidential does not turn on the arbitrary circumstance of where the document is located"].)  It is the contents of the documents themselves that determine their confidential nature.  (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 291 ["unlikely the Legislature intended to render documents confidential based on their location, rather than their content"].)

Likewise, the fact that the letters were addressed to the complainants does not necessarily mean they are foreclosed from constituting personnel or other similar records.  Rather, the very nature of the complaints mandated confidential treatment and communication.  Thus, after the investigation was completed, it was logical for CVUSD to provide complainants with responses to their complaints via written reports, namely the disposition letters.  These letters were addressed only to the relevant parties, specifically each complainant, and CVUSD only provided each complainant with information regarding its investigation into their allegations concerning their own child.  Everything was handled confidentially as evidenced by the statements informing the parents

[REDACTED]

12

Contrary to CVUSD's contention, the evidence demonstrates that the letters constitute personnel or other similar records. In short, the disposition letters are part of Doe's personnel file or other similar file for purposes of evaluating the privacy balancing of section 6254, subdivision (c).

2. *Disclosure of the Disposition Letters Would Compromise Substantial Privacy Interests.*

The CPRA recognizes the right of privacy in one's personnel files by the exemption in section 6254, subdivision (c). (*BRV*, *supra*, 143 Cal.App.4th at pp. 756-757; § 6254, subd. (c); *Detroit Edison Co. v. NLRB* (1979) 440 U.S. 301, 319, fn. 16 ["A person's interest in preserving the confidentiality of sensitive information contained in his personnel files has been given forceful recognition in both federal and state legislation governing the recordkeeping activities of public employers and agencies."].) The disposition letters are the kind of records the courts have found to implicate substantial privacy interests: They identify allegations of Doe's misconduct as a volleyball coach and CVUSD's findings based on an investigation. (*Marken*, *supra*, 202 Cal.App.4th at pp. 1274-1276 [disclosure of allegations of teacher's sexual harassment of students involves substantial privacy interests that must be weighed against public's right to know]; *BRV*, at p. 759 [disclosure of report regarding retired school district superintendent's alleged misconduct involves substantial privacy interests]; and *Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045-1047 (*Bakersfield*) [disclosure of a school district employee's alleged wrongdoing involves substantial privacy interests].) We conclude that disclosure of the disposition letters

13

would compromise Doe's significant privacy interest.  We therefore turn to the final step in our analysis.

     3. *The Potential Harm to Privacy Interests Outweighs the Public Interest in Disclosure.*

     There is an "inherent tension between the public's right to know and the society's interest in protecting private citizens (including public servants) from unwarranted invasions of privacy.  [Citation.]  One way to resolve this tension is to try to determine 'the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty.'" (*Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 241.)  Here, the public has a significant interest in the conduct of public school teachers and coaches, and in knowing how CVUSD handles allegations of their misconduct.  We must decide whether the potential harm that disclosure of the disposition letters could cause to Doe's privacy interest outweighs the public interest in disclosure.  We begin by considering whether the letters contain allegations of misconduct that are substantial in nature.

     "In *Chronicle Pub. Co. v. Superior Court* (1960) 54 Cal.2d 548 . . . , our Supreme Court concluded that complaints confidentially made to the State Bar regarding an attorney's professional conduct, and the investigations of those complaints, that do not result in public or private discipline, are confidential and not subject to disclosure.  The rule serves two public interests.  First, it protects the proper functioning of the bar's disciplinary system by ensuring people may file complaints without risk of creating a publicly accessible record and being subject to a libel action.  [Citation.]  [¶]  Second, the

14

rule of nondisclosure protects individual members of the bar from unwarranted attacks and accusations.  [Citation.]  '[The attorney] is not exposed to publicity where groundless charges are made. . . .  The fact that a charge has been made against an attorney, no matter how guiltless the attorney might be, if generally known, would do the attorney irreparable harm even though he be cleared by the State Bar.'  [Citation.]"  (*BRV*, *supra*, 143 Cal.App.4th at pp. 757-758.)

The rule in *Chronicle Pub. Co. v. Superior Court* (1960) 54 Cal.2d 548, has been applied to personnel records maintained by a school district.  (*Bakersfield*, *supra*, 118 Cal.App.4th at pp. 1045-1046.)  In *Bakersfield*, a newspaper sought complaints and disciplinary records of a school district employee.  (*Id*. at pp. 1043-1044.)  The trial court prevented disclosure of records that were not substantial in nature but allowed disclosure as to complaints regarding one incident described as sexual-type conduct, threats of violence, and violence.  The court found these complaints to be substantial in nature and reasonably well founded.  (*Ibid.*)  The Court of Appeal affirmed, finding that the disclosure of the complaints to the public does not rest upon a finding that the complaints were true or discipline was imposed.  (*Id*. at p. 1046.)  Rather, "[i]n evaluating whether a complaint against an employee is well founded within the context of section 6250 et seq., both trial and appellate courts, . . . originally and upon review, are required to examine the documents presented to determine whether they reveal sufficient indicia of reliability to support a reasonable conclusion that the complaint was well founded.  The courts must consider such indicia of reliability in performing their ultimate task of balancing the competing concerns of a public employee's right to privacy and the public interest served

15

by disclosure. [Citations.]" (*Id.* at p. 1047; cf. *Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 830-831 [under Evid. Code, § 1040, "the fact that the charges against the officers were not substantiated [is a] factor[] which the court may weigh in deciding whether the public interest favors disclosure"].)

Upon de novo review of the entire record, we conclude the disposition letters provide a sufficient basis upon which to reasonably deduce the complaints against Doe are not substantial. (*Marken*, *supra*, 202 Cal.App.4th at p. 1272 ["[A] proper reconciliation between the right to information embodied in the CPRA and the constitutional right to privacy requires 'the recorded complaint be of a substantial nature before public access is permitted.'"].) In comparison to *Bakersfield* and *Marken*, none of the complaints against Doe involved allegations of sexual-type conduct, threats of violence, and violence. (*Bakersfield*, *supra*, 118 Cal.App.4th at pp. 1043-1044; *Marken*, at pp. 1274-1275.) Instead, they were limited to Doe yelling and belittling the student-athletes in public,

[REDACTED]

and holding practice at their home.[3] The same complaints could most likely be made and found true of every successful high school athletic coach across the nation. Doe's conduct was objectively reasonable. They did nothing more than what most dedicated

---

[3] [REDACTED]

16

coaches do to motivate players, maintain discipline and team morale, and push athletes toward their full potential.

Moreover, because CVUSD handled the investigation into the complaints internally, they were not egregious enough to warrant the retention of an outside party to independently conduct the investigation. (See *BRV*, *supra*, 143 Cal.App.4th at p. 747; *Marken*, *supra*, 202 Cal.App.4th at p. 1255.) CVUSD took no formal disciplinary action (suspension or dismissal) against Doe that required reporting to the CTC. (Ed. Code, §§ 44242.5 [when a district imposes discipline on an employee such as a suspension for more than 10 days or termination because of an allegation of misconduct, the district is required to make a report to the CTC] & 44938 [district is required to give an employee at least 45-calendar-day notice before acting upon any charges of unprofessional conduct].) Doe is not a high profile public official such as the superintendent in *BRV* who "had a significantly reduced expectation of privacy in the matters of his public employment." (*BRV*, at p. 758.) Instead, Doe is a teacher who resigned from coaching the girls' volleyball team. CVUSD's concern that Doe could return to coaching is, at best, speculative: It assumes that a girls' volleyball coaching position becomes available, Doe applies for it, and CVUSD chooses to hire them.

Based on the above, we conclude that Doe's privacy interest in the disposition letters outweighs the public's minimal interest in the matter. The letters therefore are exempt from disclosure under section 6254, subdivision (c).

Because of our conclusion, we need not address ACT's remaining argument.

17

## III. DISPOSITION

The judgment is reversed. On remand, the trial court shall enter a new order granting ACT's petition for writ of mandate. ACT is awarded costs on appeal.

McKINSTER           
Acting P. J.

We concur:


CODRINGTON        
         J.


FIELDS             
         J.

Filed 12/20/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| ASSOCIATED CHINO TEACHERS, | E068163 |
| Plaintiff and Appellant, | (Super.Ct.No. CIVDS1621798) |
| v. | ORDER RE REQUESTS TO PUBLISH PUBLIC—REDACTED VERSION OF OPINION AND ORDER MODIFYING PUBLIC—REDACTED VERSION OF OPINION |
| CHINO VALLEY UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |
| | Involves material from sealed record.[1]  (Cal. Rules of Court, rules 8.45, 8.46(f)(1) and (f)(2).) |

The requests for publication, filed December 18, 2018, by appellant, Associated

Chino Teachers, and by the American Federation of State, County and Municipal

Employees, the California Faculty Association, the California Federation of Teachers, the

---

[1] This case involves material from a sealed record.  In accordance with California Rules of Court, rule 8.46(f)(1) and (f)(2), we have prepared both public (redacted) and confidential (unredacted) versions of this opinion.  We hereby order the confidential— unredacted version of this opinion sealed and nonpublished.

1

California School Employees Association, and the Service Employees International Union, to publish the nonpublished public—redacted version of the opinion filed in the above matter on November 29, 2018, are granted.

The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (3), (4) and (6).

It is so ordered that the public—redacted version of said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

On the court's own motion, the public—redacted version of the opinion filed November 29, 2018, and ordered published in this order, is modified as follows:

On page 11, the paragraph that begins "Contrary to CVUSD's claim that . . ." is modified to read:

We reject CVUSD's claim that "the records indicate they do not contain information pertaining to 'confidential personnel matters.'" [REDACTED]

On page 12, in the last full paragraph, the sentence that begins "Everything was handled confidentially . . ." is modified to read:

Everything was handled confidentially.    [REDACTED]

These modifications do not change the judgment.

McKINSTER_____
Acting P. J.

We concur:

CODRINGTON_____
                    J.

FIELDS_____
                    J.